## Brodsky's License

*Gabriel Berk*, for appellant.

*Maurice M. Green*, for objectors.

*J. Myron Shimer*, for Pennsylvania Liquor Control Board.

MILNER, J., June 4, 1942.—This is an appeal by Herbert Brodsky from an order of the Pennsylvania Liquor Control Board refusing the transfer of a restaurant liquor license. Appellant, Herbert Brodsky, operated a restaurant and taproom in premises 5909 Market Street, Philadelphia, from June 1940 until December 1941. In the fall of 1941 Brodsky purchased premises 30 North Fifty-ninth Street, Philadelphia, which is just around the corner from his first-mentioned location, and on January 7, 1942, he applied to the Pennsylvania Liquor Control Board for a transfer of his license to the new location at 30 North Fifty-ninth Street, Philadelphia.

After a hearing upon the said application for transfer, the Pennsylvania Liquor Control Board refused the transfer by its order dated March 12, 1942. At the hearing a large number of protesters appeared and testified that they were opposed to the transfer of the license to the new address because of the disorderly operation of the licensed establishment formerly operated by the licensee at 5909 West Market Street, and a number of these protesters testified that the conduct of the licensee's former place of business was characterized by noisy fights engaged in by intoxicated persons coming out of the premises; that the conduct of the patrons was generally objectionable, etc., and that they had no faith or confidence in the applicant's ability to conduct the proposed establishment at 30 North Fifty-ninth Street in a manner complying with the law and good order. It was also testified by the witnesses who

protested against the transfer that there was a sufficient number of licensed establishments in the immediate neighborhood to serve the needs of persons residing in the community. The record shows that the majority of the protesters are persons who own and reside in properties in the immediate vicinity of the premises proposed to be licensed, and they are fearful of nuisances which might work against the peace and good order of the community if a license is granted at this location.

A petition signed by 153 persons objecting to the issuance of the license for the new premises was filed with the board. At the hearing the licensee and two of his former employes testified that the business at the premises formerly licensed at 5909 Market Street was conducted in an orderly and quiet manner, and that they had no knowledge of any disturbances occurring in the premises, and applicant submitted a petition signed by a number of persons, stating that they had no objection to the granting of the license at the new location, and about twenty-three persons signed letters stating that they had no objection to the transfer, which letters are attached to the record. However, only four persons in addition to applicant appeared at the hearing. Appellant called as witnesses two employes and two customers, who testified that appellant conducted an orderly place, and that they had no knowledge of any disturbances occurring in the premises.

At the hearing on the appeal before this court a large number of persons appeared for the purpose of protesting against the transfer of the license and, with the exception of appellant and his counsel, none appeared to advocate the transfer of the license. No testimony was taken on the appeal before this court, and by agreement of counsel for appellant and the liquor board the case was submitted on the record made at the hearing before the examiner for the liquor board. We are, therefore, relegated to that record, and the questions raised

are: (1) Is the granting of the transfer within the discretion of the Pennsylvania Liquor Control Board; and (2) has there been an abuse of that discretion?

Section 408 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, provides:

"Licenses issued under this act may not be assigned. The board is hereby authorized to transfer any license from one person to another, or from one place to another within the same municipality or both, as the board may determine; but no transfers shall be made to a person who would not have been eligible to receive the license originally, nor for the transaction of business at a place for which the license could not originally have been issued lawfully."

We are cognizant of the fact that the decisions of our courts of quarter sessions are not in agreement upon the first question as to the discretion of the Liquor Control Board in a case such as this, and that the appellate courts have not passed upon the question.

In Popp's License, 41 D. & C. 500, and Larkin's License, 35 D. & C. 684, which hold that the board does not have the general discretion to refuse a transfer from place to place, the reasoning upon which these opinions is based is that when section 408, relating to transfers, is reconciled with section 403, the discretion of the board is limited, and it is mandatory upon the board to grant a transfer from place to place unless the new location is within 300 feet of a church, hospital, charitable institution, school or public playground, or is a place where the principal business is the sale of liquid fuels and oil. The pertinent portion of section 403 of the said act is as follows:

". . . the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, may, at its discretion, issue a license: Provided, however, That, in the case of any new license or the transfer of any license to a new location, the board may, in its discretion, grant or refuse

such new license or transfer if such place, proposed to be licensed, is within three hundred feet of any church, hospital, charitable institution, school or public playground, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil. . . ."

We do not read the two sections of the Act of 1937, above mentioned, as depriving the liquor board of discretion in the matter of the transfer of a license, and agree with the cases that so hold. See In re Appeal of Samuel Shockowitz and William W. Werndl, Court of Quarter Sessions of Philadelphia County, miscellaneous liquor docket, 1941, no. 806, and In re Helen Shafron, Court of Quarter Sessions of Philadelphia County, miscellaneous liquor docket, 1941, no. 839. As was said by Judge MacNeille in the appeal of Samuel Shockowitz and William W. Werndl, supra:

"The expression used [in section 408] is: 'The board is hereby authorized to transfer any license from one person to another, or from one place to another.' We take it that this gives the board the authority, but is not mandatory upon it."

Furthermore, the said section expressly provides that the board has this authority to make such transfer as "the board may determine". In our opinion, section 403 applies primarily to new licenses and with respect to transfers to new locations still expressly retains the board's "discretion", but with respect to both new licenses and transfers empowers the board "in its discretion" to refuse a license or transfer where the location sought is within 300 feet of any church, hospital, charitable institution, school or public playground, or where the new location is also principally used for the sale of liquid fuels and oil. In other words, section 403, with respect to new licenses and transfers to new locations, points out to the board that it may, in the exercise of its discretion, base its refusal to make the transfer upon certain physical structures or uses of

property that are in the vicinity of the new location, as distinguished from the other general considerations that can be made the basis for its determination under section 408.

Section 3 of the Pennsylvania Liquor Control Act reads as follows:

"Interpretation of Act. (a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

The title of the act shows that it was not intended as an act to encourage the sale of alcoholic and malt beverages, but an act to "regulate and restrain the sale" of such beverages.

We can find nothing in the act that makes it mandatory upon the board to authorize the transfer of a license in such a case as the one we have before us. Many of the people living in the vicinity of the new location also live in the general vicinity of the old location and, having knowledge of the manner in which appellant operated his old licensed premises, do not want the peace and morals of their neighborhood disturbed, and call upon the board for protection. To say that it is mandatory upon the board to approve the transfer if the new location is not within 300 feet of a church, hospital, school, etc., would not be within the intention of the legislature as expressed in the act itself, and would not be a liberal construction of the act. Under such a construction of the act the holder of a license in a commercial district, who has conducted his establishment in a noisy and disorderly manner, could thrust his manner of conducting a taproom upon the people living in a quiet residential section, provided he selected a location which was not within 300 feet of certain prohibited structures, and the board would

be compelled to grant the transfer and the people would be powerless to prevent him from invading the peace and quiet of the section they chose for their homes. It appears to us that this was not the intendment of the act nor the meaning of the words used in the act.

We, therefore, conclude, in answer to the first question, that the Pennsylvania Liquor Control Board has the discretion in this matter to refuse the transfer.

Passing to the second question, as to whether the board has abused its discretion, it will be noted that the only record before us is that taken before the examiner of the board. No testimony was offered before us to rebut or contradict the record in this case. We have read the record carefully, and agree with the board that there is merit in the protests made by the residents of the surrounding neighborhood. The order of the board is based upon ample and substantial testimony, and upon considering it we come to the same conclusion that the board reached. We firmly believe that the people in the neighborhood of the proposed new location are entitled to protection. Section 408 of the act provides, inter alia, that ". . . no transfer shall be made to a person who would not have been eligible to receive the license originally, . . ."

It will be noticed that this application is for a transfer not only to a new location, but to the same person who held the license at the old location, and if appellant, Herbert Brodsky, were making an application for a new license at the new location, the testimony adduced at the hearing with respect to his unfitness to operate a place where alcoholic and malt beverages are sold would justify the board, in our opinion, in refusing to grant the license. A map which was introduced at the hearing before the examiner for the board shows that there is a tavern at the northeast corner of Fifty-ninth and Market Streets, which is only half a city block distant from the proposed new location, and the map also shows that there is another tavern one block to the east on Market Street. It is, therefore, apparent

that the needs of the neighborhood are amply provided.

We, therefore, have come to the conclusion, in answer to the second question, that the board has not abused its discretion and that its finding and order in this matter are amply justified by the record.

For the reasons indicated, the appeal in this matter should be dismissed, for to hold otherwise would amount to a plain disregard of the meaning of the words used in the Liquor Control Act, and of the interpretation the legislature directed should be applied to it; and would reduce the functions of the Liquor Control Board to acting as a mere rubber stamp to approve all transfers of licenses and deny citizens the protection of their "public welfare, health, peace and morals" which the Liquor Control Act was enacted to assure. We, therefore, make the following

### Order

And now, to wit, June 4, 1942, for the reasons set forth in the foregoing opinion, the appeal of Herbert Brodsky, trading as Herb's, from the order of the Pennsylvania Liquor Control Board refusing to transfer a retail restaurant liquor license to him for premises numbered 30 North Fifty-ninth Street, Philadelphia, Pennsylvania, is dismissed and the said order of the said board is hereby affirmed.